**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

**ENTERPRISE RENT-A- CAR COMPANY OF BOSTON, LLC,**

**Plaintiff**

**V.**

**ROBERT MAYNARD,**

**Defendant**

**--------------------------------------------------------**

**Case No Case No. 2:11-cv-0047-JAW**

**MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

This case is a straightforward matter of enforcing the terms of a rental agreement between Plaintiff Enterprise Rent-A-Car Company of Boston, LLC ("Enterprise") and Defendant Robert Maynard ("Maynard"). On June 3, 2009, on behalf of a friend named Scotty Beausejour, Maynard rented a car from Enterprise for a week. Contained in the rental agreement which Maynard signed is a standard clause by which Maynard agreed to indemnify and hold Enterprise harmless for any claims or damages arising from the use of the rental car. On June 7, 2009 Mr. Beausejour was involved in a serious automobile accident in which a pedestrian, Thomas Webster, was struck and injured. As a result of that accident a claim was made against Enterprise (and others) and Enterprise ultimately paid Mr. Webster a settlement of $260,000.00. Enterprise now seeks the enforcement of the unambiguous terms of its indemnity agreement with the renter of the car, Maynard. Because the terms of the indemnity provisions are clear and unambiguous and there are no issues of material fact at issue for trial, pursuant to Fed. R. Civ. P 56, Enterprise moves this Court for summary judgment in its favor.

**FACTS**

The undisputed material facts are as follows:

Maynard is a sole proprietor with a business and residential address at 131 Rochester Street, Westbrook, Maine. Stipulation of Material Facts ("SMF") 1. On June 3, 2009, Maynard rented a Dodge Charger from Enterprise (the "Rental"). SMF 2. Maynard executed a rental agreement with Enterprise which contained the terms and conditions of the rental (the "Rental Agreement"). SMF 2. Section 8 of the Rental Agreement states as follows:

> 8. Indemnification by Renter. Renter shall defend, indemnify and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs, attorney fees, and other expenses incurred by Owner in any manner from this rental transaction, or from the use of Vehicle by any person, including claims of, or liabilities to, third parties. Renter may present a claim to Renter's insurance carrier for such events or losses; but in any event Renter shall have final responsibility to Owner for all such losses. This obligation may be limited if Renter purchases optional DW and/or optional SLP. SEE PARAGRAPHS 16 AND 17 FOR MORE INFORMATION ON OPTIONAL DW AND OPTIONAL SLP.

SMF 3. Maynard was aware that he could buy supplemental liability protection ("SLP") in the amount of $1,000,000 at a cost of $12.99 per day on the rental vehicle. SMF 4, 5; see also SMF 2, Exh. 1. Maynard declined to purchase the optional protection offered by Enterprise because he believed the SLP cost too much. SMF 4. He also believed his personal automobile liability insurance would cover the operation of the vehicle. SMF 5. Maynard gave the Rental to non-party Scotty Beausejour ("Beausejour") to use for the rental period. SMF 6. Beausejour fully reimbursed Maynard for the cost of the rental. Id.

On June 7, 2009 Beausejour was involved in an accident in which he struck Thomas Webster ("Webster"), causing Webster injury. SMF 7. On May 24, 2010 Webster filed an action in the Maine Superior Court, Cumberland County, titled Webster v. Beausejour, Docket

No. CV-10-267 ("Webster Matter"), against Beausejour alleging that Beausejour's negligent operation caused his injuries (the "Webster Complaint"). SMF 8. On May 25, 2010 Webster made a demand for payment on Enterprise pursuant to its obligations under Maine's Financial Responsibility Act, 29-A M.R.S. § 1551, et seq. SMF 9. Enterprise assumed the defense of Beausejour on or about June 16, 2010. SMF 10. On April 30 and July 16, 2010 Enterprise notified Maynard of his obligation to defend and indemnify Enterprise for any damages relating to Beausejour's use of the Rental. SMF 11. Maynard did not respond or otherwise indemnify Enterprise for claims alleged in the Webster Complaint. SMF 11. On September 20, 2010 Enterprise notified Maynard of scheduled mediation dates and invited Maynard to participate in the mediation in conformance with his obligations under the indemnity provisions of the Rental Agreement. SMF 12. Pursuant to the Superior Court Scheduling Order in the Webster Matter, Enterprise on behalf of Beausejour engaged in mediation with Webster to attempt to resolve the case. SMF 16. Maynard through his attorney declined to participate in the mediation. SMF 15. As a result of the mediation, on December 16, 2010, Enterprise settled the Webster Matter for a total cash payment of $260,000. SMF 17. In addition to the cash payment to Webster, Enterprise has expended $17,401.67 in attorney's fees defending against the Webster complaint. SMF 18.

Prior to this rental transaction, Maynard had rented cars from Enterprise on 6 different occasions in the period between June 2007 through June 2009. SMF 19. On each occasion Maynard declined SLP offered by Enterprise. SMF 19. Maynard rents cars with sufficient frequency that he set up a corporate account with Enterprise and other car rental agencies to obtain a corporate rental rate. SMF 20. Maynard estimates that he has rented cars from Enterprise and other car rental agencies over 50 times over the last 8 years. SMF 21. In each

instance Maynard declined the collision damage waiver and SLP. SMF 21; see also SMF 19, Exh. 2. When Maynard rents a car from a rental agency he receives a copy of the rental agreement and its terms and conditions. SMF 22. Maynard rented cars on behalf of Scotty Beausejour on approximately 5 occasions prior to the rental of the Dodge Charger. SMF 23. Enterprise was not a defendant in the underlying Webster Matter by which Thomas Webster sought recovery from Scotty Beausejour. SMF 24. Enterprise has met the requirements of 29-A M.R.S.A. § 1611 through self-insurance guaranteed by means of a surety bond. SMF 25. The bond provides Enterprise with coverage that meets the requirement of the statute. SMF 25.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For summary judgment purposes, "genuine" means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a material fact is one which might affect the outcome of the suit under the governing law. Buchanan v. Maine, 469 F.3d 158, 166 (1st Cir. 2006) (quoting Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 218-19 (1st Cir. 2004)) (internal quotation marks omitted). Neither conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (citation and internal quotation marks omitted).

## ARGUMENT

A. Maynard's Indemnity Obligation is Unambiguous and Enforceable.

Foremost this is a contract enforcement action. As the undisputed facts show, Maynard entered into a car rental agreement which by its unambiguous terms requires Maynard to:

> defend, indemnify and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs, attorney fees, and other expenses incurred by Owner in any manner from this rental transaction, or from the use of Vehicle by any person, including claims of, or liabilities to, third parties.

See SMF 2, Exh. 1. The words themselves could not be more clear or unequivocal. Maynard explicitly agreed to indemnify Enterprise for all losses, including losses arising from his lending the rental car to Scotty Beausejour. It is black letter law that "[i]f the terms of a contract are unambiguous, then it must be enforced according to those terms in accordance with their ordinary and usual sense." Fed. Ins. Co. v. Commerce Ins. Co., 597 F.3d 68, 70 (1st Cir. 2010); see also State Farm Mut. Auto. Ins. Co. v. Koshy, 2010 ME 44, ¶ 52, 995 A.2d 651, 667, (concluding there is no ambiguity in the indemnification provisions of a similar rental agreement). Thus, there is no issue of fact that the express terms of the Rental Agreement require that Maynard indemnify Enterprise. The question then is whether there is some other legal basis upon which Maynard can avoid the application of this unequivocal provision to him.

B. Maynard's defenses to the indemnity provisions have no merit.

Enterprise anticipates that Maynard will argue two different propositions in order to avoid liability in this case: First, that the payment by Enterprise was a voluntary act and thus he is not obligated to indemnify Enterprise for a voluntary payment. Second, the indemnification provisions are unconscionable and thus unenforceable. Neither of these have merit.

i. The payment of the settlement amount was not voluntary.

Maynard's first assertion that the payment of the settlement amount was voluntary ignores the absolute mandate of Maine's Financial Responsibility Law. Section 1611 of the Financial Responsibility Law states in relevant part:

> 1. **Insurance, bond or self-insurance required**. The Secretary of State may not register any motor vehicle for rent, lease, hire or livery and a person may

> not operate or cause to be operated on any public way in the State such a motor vehicle until the owner or owners of that vehicle procure insurance or a bond covering the operation of that vehicle by:
>
> . . .
>
> B. Presenting a good and sufficient indemnity bond, approved by the Secretary of State, bonding the applicant in an amount the Secretary of State prescribes and having as surety 2 responsible individuals or a surety company authorized to transact business in this State.
>
> . . .
>
> 5. **Coverage of insurance or bond**. The required insurance policy or bond must adequately provide liability insurance for the collection of damages for which the owner of a motor vehicle or vehicles may be liable by reason of the operation of a motor vehicle or vehicles subject to this chapter.

29-A M.R.S. § 1611(1) and (5) (emphasis added). Accordingly, section 1611 requires that Enterprise either obtain insurance or can self-insure and support the obligation with a bond in the event it fails to satisfy any judgment resulting from the operation of one of its vehicles. In this instance, Enterprise satisfied its obligation under section 1611 by self-insuring and securing a bond.[1]

As a self-insurer under Maine's Financial Responsibility Law, Enterprise is directly liable for the payment of the damages arising from the operation of its rental car. It is well established that the purpose of the financial responsibility laws is to ensure the payment of compensation to injured third parties. See Koshy, 2010 ME 44, ¶44, 995 A. 2d at 665 (citing Piche v. Nugent, 2005 U.S. Dist. LEXIS 22275 (D. Me. Sept. 30, 2005)); Greenvall v. Maine Mut. Fire Ins. Co., 1998 ME 204, ¶10 715 A. 2d 949, 953 (very purpose which the Legislature sought to achieve, i. e. financial responsibility) (citing Wescott v. Allstate Ins., 397 A.2d 156, 167-68 (Me. 1979)).[2]

---

[1] It is important to note, however, that Enterprise's election to self-insure does not make it an insurance company. See Koshy, 2010 ME 44, ¶ 61 n.10, 995 A.2d at 669 n.10.

[2] Prior to 2005 in addition to the financial responsibility obligations of section 1611, car rental agencies in Maine were also subject to section 1652, which provided for the joint and several liability of the renter and car rental agencies. See 29-A M.R.S. § 1652. As noted in Koshy the effect of this statute has been preempted by recent federal legislation. See Koshy, 2010 Me. 44, ¶ 19 n.6., 995 A.2d at 659-660 n.6. Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users or SAFETEA-LU, Pub. L. No. 109-59, § 10208, 119 Stat. 1144, 1935 (2005) (codified at 49 U.S.C.S. § 30106(a) (LexisNexis Supp. 2010)). The SAFETEA-LU Act however

In short, because Enterprise has fulfilled its obligation under section 1611 by self-insuring its financial responsibility obligations, Maynard's argument that the payment of the settlement amount was a voluntary act has no merit.

ii. The indemnity provisions are not unconscionable.

Enterprise anticipates that Maynard will claim that the indemnity provisions are unenforceable because they are unconscionable provisions of a contract of adhesion. In Barrett v. McDonald Invs., Inc., 2005 ME 43, ¶ 32, 870 A.2d 146, 156 (Me. 2005) the Law Court stated the basic characteristics of a contract of adhesion:

> A contract of adhesion is a standardized contract that is imposed and drafted by a party with a superior bargaining position, and that gives the other party only the choice to accept or reject the contract. A contract of adhesion is not *per se* unconscionable, but the defense of unconscionability may be asserted to a contract of adhesion "exacted by the overreaching of a party." (citations omitted).

The determination of whether a contract is unconscionable is a question of law. See House of Flavors, Inc. v. TFG-Mich., L.P., 674 F. Supp. 2d 306, 313 (D.Me. 2009)(remanded on other grounds); Restatement (Second) of Contracts § 208, cmt. f (1981); 11 M.R.S. § 1108 (stating that if the court "as a matter of law finds" a contract to have been "unconscionable at the time it was made the court may refuse to enforce" the contract or any remainder thereof).

a) The Rental Agreement is not a contract of adhesion.

---

did not affect or change the financial responsibility obligations of rental car agencies under state law. Section b of the Act states:

> (b) Financial responsibility laws. Nothing in this section supersedes the law of any State or political subdivision thereof--
> (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or
> (2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

49 U.S.C. § 30106.

First, it is not a foregone conclusion that this rental agreement is a contact of adhesion. While the rental agreement was a form contract which Maynard could either accept or reject, that fact alone does not make the contract one of adhesion. One of the factors to be considered is the "size and commercial setting of the transaction." Rosenfeld v. Port Authority of N.Y and N.J., 108 F. Supp. 2d 156, 165 (E.D.N.Y. 2000).

In Rosenfeld, the court rejected the notion that a form contract was a contract of adhesion when it was commercially impracticable due to the volume of business "to negotiate individual terms with each customer prior to the execution of each customer agreement and the customer had a choice not to enter into the agreement." Id.; see also Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 377 (7th Cir. 1990)(recognition that form contracts are necessary in many transactions because it is impracticable to negotiate each individual agreement without significantly increasing the cost of and time to complete the transaction). There is no dispute that Enterprise is a rental car company which rents thousands of vehicles in Maine alone.

While the language of the Rental Agreement was not subject to negotiation, Maynard had the choice to purchase at additional cost personal accident insurance, SLP and the property damage waiver. It is not disputed that Maynard made a business decision not to buy SLP because he believed it was too expensive. Given that Maynard had the choice to purchase SLP, it simply cannot be said that the rental contract was presented on a take-it-or-leave-it basis. For $12.99 a day Maynard could have chosen to purchase protection that would have been available to him in this case.[3] In short, Maynard was provided with a meaningful choice as to what he wanted to purchase and he knowingly declined to purchase the additional insurance coverage.

b. The Rental Agreement is enforceable even if it is a contract of adhesion.

[3] In fact, purchasing the additional insurance would have cost Maynard nothing since Scotty Beausejour reimbursed him for the cost of the rental. See SMF 6.

Second, a contract of adhesion is not *per se* unconscionable or otherwise unenforceable. As the Maine Supreme Judicial Court recently observed in Koshy:

> [c]ontracts of adhesion are not inherently unenforceable. A party may avoid the enforcement of an unambiguous contract of adhesion, however, by establishing that the contract is unconscionable.

Koshy, 2010 Me. 44, ¶ 55, 995 A.2d at 668 (citations omitted). In deciding claims of unconscionability, courts consider a variety of factors that may be indicative of procedural or substantive unconscionability. Barrett v. McDonald Invs., Inc., 2005 ME 43, ¶¶ 32-33, 870 A.2d at 155; Siemens Credit Corp. v. Newlands, 905 F. Supp. 757, 764 (N.D. Cal. 1994) (unconscionability has both a "procedural" and a "substantive" element). Substantive unconscionability refers to the fairness of the provision itself. See Stenzel v. Dell, Inc., 2004 Me. Super. LEXIS 108, 4-5 (Me. Sup. Ct. Mar. 10, 2004)(citing In re Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002), cert. denied, 537 U.S. 1112, (2003)). Procedural unconscionability refers to the circumstances surrounding the adoption of the provision. Id. The measure of unconscionability is taken at the time of execution of a contract. Jay Cashman, Inc. v. Portland Pipe Line Corp., 559 F. Supp. 2d 85, 108 (D.Me. 2008)

In Jay Cashman, Inc. the court discussed the elements of procedural and substantive unconscionability. With regard to procedural unconscionability the court noted:

> The concept is "broadly conceived to encompass not only the employment of sharp practices and the use of fine print and convoluted language, but a lack of understanding and an inequality of bargaining power."

Id. (citing American Airlines, Inc. v. Wolens, 513 U.S. 219, 249, (1995)).

In Siemens Credit Corporation v. Newlands the court explained the procedural element as follows:

> The procedural element focuses on oppression, which results from an inequality of bargaining power, and surprise, which involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix form drafted by the party seeking to enforce the disputed terms.

Siemens Credit Corp., 905 F. Supp. at 764.  Whether a contract is procedurally unconscionable is not the end of the inquiry, however:

> Even if a contract term fails the test of procedural unconscionability, an "unbargained for" term will only be denied enforcement if it is also substantively unreasonable. A & M Produce, 135 Cal. App. 3d at 487. A (substantively) unconscionable bargain has been defined as one that "no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." Hume v. United States, 132 U.S. 406, (1889). This standard has not changed in the intervening 100 years.  See e.g. Garrett v. Janiewski, 480 So. 2d 1324, 1326 (1985) (unconscionable synonymous with "shocking to the conscience" and "monstrously harsh").

Id. at 765; see also Jay Cashman, Inc., 559 F. Supp. 2d at 108; Bither v. Packard, 115 Me. 306, 314, 98 A. 929, 932 (1916)(such unconscionableness or such inadequacy should be made out as would (to use an expressive phrase) shock the conscience).

In analyzing claims of unconscionability in contract, "courts dealing with unconscionability claims have espoused the principle that the parties ought to be left free to make their own agreements in the absence of fraud or patent overreaching." Hydraform Products Corp. v. American Steel & Aluminum Corp., 127 N.H. 187, 195, 498 A.2d 339, 343 (1985).  In Hydraform Products Corp., the court stated:

> The issue of over-reaching therefore tends to turn on whether the bargaining power is so disparate that the weaker party is left without any genuine choice. Such a conclusion is difficult to draw when the favored party has competitors with whom the other party may deal.

127 N.H. at 195, 498 A.2d at 344 (citations omitted).  Thus, inherent in the analysis of whether a contract term is unconscionable, the court must focus on the fact that additional options were available in both the contract and the market place.  Courts have concluded that the offer of insurance in a contract provides a lessee with a meaningful choice.  Addressing whether an

exculpatory clause in a storage unit rental contract was unconscionable, the Third Circuit Court of Appeals in Kane v. Uhaul International, Inc., 2007 U.S. App. LEXIS 2987, stated:

> When addressing unconscionability claims in the context of a contract of adhesion, the New Jersey Supreme Court examines the contract as well as (1) its subject matter, (2) the bargaining positions of the parties, (3) "the degree of economic compulsion motivating the 'adhering' party," and (4) the public interest in the enforcement of the contract. In this case, an examination of the factors does not require a finding of unconscionability. The subject matter of the contract is the lease of a self-storage unit. As to the bargaining power of the parties, the Appellants had the choice to purchase insurance. Additionally, as the Appellants concede, there are other self-storage facilities in southern New Jersey. There also does not appear to be any economic compulsion that motivated the Appellants to sign the contracts; indeed, there is no evidence to suggest that a storage unit is a necessity. Finally, it is hard to say that the public interest is affected by this contract. Again, as discussed above, the Appellants were allowed to protect themselves against negligence by purchasing insurance. Therefore, we conclude that the exculpatory clause is not unconscionable.

Id. at *7-*9.

Moreover, this Court has held that the fact a party has the choice to walk away means that the agreement cannot be considered unconscionable. See Jay Cashman, Inc. v. Portland Pipe Line Corp., 559 F. Supp. 2d at 109 (between sophisticated entities opportunity for a party to review the terms of a contract and "simply walk away from the deal" means agreement not unconscionable); see also JOM, Inc. v. Adell Plastics, Inc., 151 F.3d 15, 28 (1st Cir. 1998), *vacated in part on reh'g on other grounds*, 193 F.3d 47 (1st Cir. 1999)("Since the doctrine of unconscionability primarily relates to the unequal bargaining power between a merchant and a non-merchant consumer, it is not surprising that it is exceedingly rare that a clause in a commercial contract between merchants is deemed unconscionable.").

The fact that Enterprise is a larger company than Maynard's sole proprietorship is not particularly relevant. "A bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party." Restatement (Second) of Contracts § 298 cmt. d (1981); see also 7 Corbin on

Contracts § 29.4, at 393 (rev. ed. 2002) ("Superior bargaining power is not in itself a ground for striking down a resultant contract as unconscionable.").

When viewed in the light of the prevailing case law, Maynard cannot establish the first element of his defense that the Rental Agreement was procedurally unconscionable. Maynard is a repeat and sophisticated consumer of rental car services who established a business account to obtain lower pricing. He has rented cars from Enterprise and several other rental agencies at least 50 times over the last 8 years. Maynard rented cars from Enterprise alone 6 times before he rented the Dodge Charger for Beausejour. In each of those prior six rentals Maynard received a copy of the terms and conditions and each rental agreement contained the same or similar indemnity provision. In each prior occasion, as well as in this case, Maynard acknowledged by signing the agreement that he had read and agreed to the terms and conditions. The entire Rental Agreement amounts to three pages. Maynard acknowledges that he was aware that he could buy at additional cost SLP and declined to do so based on the cost. Maynard has initialed his declination of SLP with each of his Enterprise rentals. Maynard acknowledged by signing the agreement that he had read and agreed to the terms and conditions. The indemnification provision itself is a separately titled section written in plain English and captioned in underlined bold type.

The undisputed facts establish that there were no hidden terms, surprise or oppression of Maynard in his agreement to indemnify Enterprise. More important, is the fact that Maynard could have simply "walked away from the deal." There was no compelling reason for Maynard to rent the car for Beausejour and, therefore, Maynard simply could have decided to let Beausejour work out his own car rental arrangements.

Thus, looking at the totality of the undisputed facts, it is clear that not only did Maynard have a meaningful choice within the contract: i.e. he could purchase insurance, but he entered into this contract on a commercial basis after multiple opportunities to review the same or similar terms. As such his defense of unconscionability fails on the procedural element alone.

c. Maynard's defenses fail the substantive test.

To the extent that Maynard argues that the indemnity provision is substantively unconscionable, the Law Court has essentially rejected this assertion. As the Law Court observed in Koshy nothing in Maine law prevents a renter from contracting to indemnify Enterprise for its financial responsibility obligations:

> Although the statute does not place liability on the renter when the renter is not negligent, nothing in the statute precludes the renter and the owner rental business from contracting for the renter to indemnify the owner for that liability. The statutory purpose to ensure compensation for injured third parties, is satisfied by Enterprise's payment to those parties. This statutory purpose has therefore been served, whether or not Enterprise is later indemnified by the vehicle's renter, or by any other person for that matter. In these circumstances, the detriment to society is not so great as to overwhelm the freedom of parties to contract. Thus, the indemnification provisions of the rental agreement are not illegal, do not violate positive legislation, and, because the contract language provides for indemnification after Enterprise has paid the injured parties, are not against Maine's public policy.

Koshy, 2010 ME 44, ¶ 44, 995 A.2d at 665. Given that the Law Court has determined that it is permissible to include an indemnification provision in a car rental agreement, it can hardly be said that such a provision is "shocking to the conscience" or is one that "no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other." In short, Maynard's affirmative defense on unconscionability simply fails on these facts.

This result is in accord with other courts that have examined the same issue on similar facts. For example in Morris v. Snappy Car Rental Inc., 84 N.Y.2d 21, 30, 637 N.E.2d 253, 256-57 (1994), the court rejected the renter's claim that the indemnity provision contained on the backside of a rental contract was unconscionable. The court stated:

> Plaintiff's claim must be judged "by whether the party seeking to enforce the

> contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties" (Sablosky v. Gordon Co., 73 N.Y.2d 133, 139). Plaintiff signed her name immediately beneath the following prominently displayed language: "I HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS ON *BOTH SIDES* OF THIS RENTAL AGREEMENT." Plaintiff not only signed the contract, she also initialed the space next to the provision which permitted her to decline to purchase additional personal accident insurance.
>
> Nothing in the record indicates that plaintiff, a high school graduate who attended college, was prevented from reading the agreement or asking that its contents be explained to her by one of Snappy's representatives. She has made no allegation that she was the victim of deceptive or high pressure tactics (see, Gillman v Chase Manhattan Bank, 73 N.Y.2d 1,11). The contract provisions at issue were set forth in a clear and legible manner and were printed in the size required by [a New York statute which requires all contracts for personal, family or household purposes and residential leases to be no less than eight points in depth or five and one-half points in depth for upper case type.] Plaintiff has proffered no basis as would excuse her from being bound by the terms of the rental agreement. Although plaintiff would use to her advantage the fact that she did not read the terms of the rental agreement and was unaware of its indemnification language, this is simply no bar to enforcement of the rental agreement.

Id.

More recently in Ford Motor Credit Co. v. Meehan, No. 05 CV 4807, 2008 U.S. Dist. LEXIS 25474 at 15-19 (E.D.N.Y. 2008), the U.S. District Court for the Eastern District of New York rejected a claim that the renter lacked a meaningful choice when he entered into a car lease agreement that contained indemnity provisions on the back side. Ford sought to enforce the indemnity provision against the lessee after Ford settled for over $4,500,000 third party claims caused by the negligence of the driver. In rejecting the lessee's unconscionability defense, the court stated:

> Meehan has offered no proof of high pressure or deceptive tactics, or that he was prevented from reading the Lease in its entirety. Instead, he merely claims that he was not shown the reverse side of the Lease and that no one ever explained the indemnity provision to him. Even if all of Meehan's assertions are true, they do not show procedural unconscionability. If Meehan did not understand the Lease or had questions about it, the burden was on him to raise his concerns before signing it. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting

> party, a party who signs or accepts a written contract. . . is conclusively presumed to know its contents and to assent to them[.] Thus, even if Gold did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing [the agreement].") (internal citations and quotation marks omitted); Moss v. Rent-A-Center, Inc., No. 06 CV 3312, 2007 U.S. Dist. LEXIS 60011, 2007 WL 2362207, at *5 (E.D.N.Y. Aug. 15, 2007) (finding that burden on signatory to read agreement); Morris, 84 N.Y.2d at 30 (noting that failure to read agreement no bar to enforcement). Meehan has not argued that he lacked experience or education and thus could not understand the terms of the Lease. Nor has he argued that he ever requested that anyone review the terms of the Lease with him.
>
> At the end of the day, all the Court is left with is Meehan's argument that he was not provided with sufficient notice to review the reverse side of the Lease, which contained the indemnity clause. The record establishes that Meehan signed his name on the front side of the Lease, directly above the lessor's signature. Immediately below the lessor's signature, in capital letters, is the following statement: "NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION." The front of the Lease, above the signatures, contains paragraphs 1 through 17. The reverse side contains paragraphs 18 through 35. The indemnity provision is found in paragraph 33. Under these circumstances, the Court finds that the terms on the reverse side of the Lease were sufficiently called to the attention of Meehan and that he was bound by them. See Blair v. Albany County, 127 A.D.2d 950, 512 N.Y.S.2d 552, 553 (3d Dep't 1987) (finding that lessee "expressly agreed to the indemnity condition on the reverse side" where "[i]mmediately preceding [lessee's signature] [wa]s a sentence stating that '[t]he above equipment has been counted and received in good condition and rented in accordance with terms and conditions * * on reverse side.'"); Am. Utex Int Inc. v. ICC Corp., 74 A.D.2d 747, 425 N.Y. S.2d 579, 580 (1st Dep't 1980) (finding that buyer had sufficient notice of arbitration provision located on back of sales note where buyer signed note immediately above the words "Subject to the general terms and conditions set forth on the back hereof'); Zwiebel v. Guttman, 4 Misc. 3d 1010A, 791 N.Y.S.2d 874 (Table), 2004 WL 1725754, at *7 (Sup. Ct. Kings County 2004) ("Zwiebel's acknowledgment herein that two sides to the lease agreement exist, binds him regardless whether he actually read those terms.") (citing Morris)…

The facts of this case essentially mirror those in both Meehan and Morris and this Court should reach the same result here. In short, Maynard has failed to raise any substantive defense to the enforcement of the indemnity provision of the Rental Agreement and it should be enforced according to its terms.

## CONCLUSION

Because Maynard has had multiple opportunities to review the provisions of Enterprise's rental agreement and because he had other choices, e.g. whether to purchase SLP, DW or to simply not rent the car for his friend, Maynard cannot meet his burden to show that as a matter of law, the indemnity provisions were unconscionable at the time he signed the contract. Nor can Maynard establish that the payment of the settlement amount was voluntary. In summary, the contract is unambiguous and Maynard agreed to indemnify Enterprise for all claims arising out of the use of the car. Accordingly, Enterprise requests this Court grant its motion and enter summary judgment in its favor and against Maynard.

Dated:  September 1, 2011

/s/Christian T. Chandler
Christian T. Chandler
CURTIS THAXTER LLC
One Canal Plaza Suite 1000/P.O. Box 7320
Portland, Maine  04112-7320
Tel:  (207) 774-9000
Fax:  (207) 775-0612
Email:  cchandler@curtisthaxter.com

Attorney for plaintiff
Enterprise Rent-A-Car Company
of Boston, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2011, I electronically filed the foregoing document entitled Motion for Summary Judgment With Incorporated Memorandum of Law the Clerk of Court using the CM/ECF system which will send the notification of such filing to the following: Christopher Dinan, Esq. (cdinan@monaghanleahy.com) and that there are no non-registered participants.

Dated: September 1, 2011

/s/Christian T. Chandler

Christian T. Chandler
CURTIS THAXTER LLC
One Canal Plaza Suite 1000/P.O. Box 7320
Portland, Maine 04112-7320
Tel: (207) 774-9000
Fax: (207) 775-0612
Email: cchandler@curtisthaxter.com

Attorney for plaintiff
Enterprise Rent-A-Car Company
of Boston, LLC