UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ENTERPRISE RENT-A-CAR      )
COMPANY OF BOSTON, LLC,    )
                            )
           Plaintiff,     )
                            )
      v.                )     2:11-cv-00047-JAW
                            )
ROBERT MAYNARD,        )
                            )
           Defendant.   )

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

In an unusual twist, a rental car company insists it was obligated to pay damages to a third party who was injured by the permissive operator of its rental vehicle and the renter maintains it was not. The Court agrees with the renter and concludes that federal law, which forbids the imposition of vicarious liability on rental car companies, preempts a Maine statute that imposed it. The Court further concludes that even if the rental car company's payment on behalf of the permissive operator was not voluntary under the doctrine of equitable subrogation, its non-voluntary payment does not grant the rental car company the right to reimbursement from the renter.

## I.   STATEMENT OF FACTS[1]

Enterprise Rent-A-Car of Boston, LLC (Enterprise) is a Delaware limited liability company doing business in Westbrook, Maine.[2]  Robert Maynard is a sole proprietor who resides in Westbrook, Maine.  *Stip.* ¶ 1.  On June 3, 2009, Mr. Maynard rented a Dodge Charger (Rental) from Enterprise.  *Id.* ¶ 2.  Mr. Maynard executed a rental agreement (Rental Agreement) with Enterprise which contained

---

[1]   The Court's recitation of the facts generally tracks a stipulation of material facts that the parties submitted on September 10, 2011, signed by both counsel and containing twenty-five paragraphs and three exhibits.  *Stip. of Material Facts* (Docket # 14) (*Stip.*).  With his motion for summary judgment, Mr. Maynard also filed a statement of material facts, containing twenty paragraphs based on the Stipulation.  *Def.'s Statement of Material Facts in Support of Mot. for Summ. J.* Attach. 1 (Docket # 15) (DSMF).  By contrast, Enterprise did not file a separate statement of material facts in support of its motion.  Mr. Maynard noticed this absence and asserted that because Enterprise is relying on the Stipulation alone, "it does not appear that the Defendant can comply with the requirement of Rule 56(c) that a party opposing a motion for summary judgment shall submit a separate statement of material facts which 'shall admit, deny or qualify' the facts in the moving party's statement of material facts."  *Resp. of Def. to Pl.'s Statement of Material Facts* at 1 (Docket # 21).

Mr. Maynard also observes that "there were inaccurate references to the Stipulation of Material Facts in Plaintiff's Motion for Summary Judgment," which he addressed in his opposition to Enterprise's motion.  *Id.* at 2.  In his opposition, Mr. Maynard notes that the Stipulation caused some "procedural confusion given local Rules 56(b) and (c)," but he agrees that "substantively the parties have stipulated to the facts necessary to decide both Motions."  *Def.'s Opp'n* at 2.  Nevertheless, Mr. Maynard believes there is "some confusion" in Enterprise's citations to the Stipulation.  *Id.*  Some, he concedes, are "relatively trivial," such as "references to the wrong paragraphs in the Stipulation," but other statements, he says, are not supported by the Stipulation.  *Id.* at 2-3.

In its defense, Enterprise says that it checked with the Clerk's Office and was authorized to submit a stipulation in lieu of a statement of material fact.  *Pl.'s Reply* at 1-2.  Enterprise agrees that if the statements in its memoranda differ from the contents of the Stipulation, the Stipulation controls.  *Id.* at 2.

The Court considers this issue resolved.  It is true that the Local Rules do not provide for a stipulation in lieu of a statement of material facts.  D. ME. LOC. R. 56(b)-(d).  Perhaps they should.  But this is not a situation where the parties filed statements of material fact contradicting their stipulations and have "caught the Court in the middle of their own factual dispute."  *Newton v. LePage*, No. 11-cv-124, *Interim Order* at 3 (Docket # 70) (D. Me. Nov. 8, 2011).  The parties' agreement that the language of the Stipulation controls any variances obviates any ongoing controversy.

[2]   In their Stipulation, the parties inadvertently failed to identify Enterprise Rent-A-Car.  The Complaint alleged that it is a Delaware limited liability company doing business in Westbrook, Maine.  *Compl.* ¶ 1 (Docket # 1).  But in his Answer, the Defendant said that he is without sufficient knowledge about this allegation and therefore denied it.  *Def.'s Ans.* ¶ 1 (Docket # 7).  On April 20, 2012, the Court confirmed at oral argument that there is no dispute about the Plaintiff's identity and has included this statement in the Stipulation.

the terms and conditions of the Rental Agreement.  *Id.*  Section 8 of the Rental Agreement reads:

> 8.  <u>Indemnification by Renter</u>.  Renter shall defend, indemnify and hold Owner harmless from all losses, liabilities, damages, injuries, claims, demands, costs, attorney fees, and other expenses incurred by Owner in any manner from this rental transaction, or from the use of Vehicle by any person, including claims of, or liabilities to, third parties.  Renter may present a claim to Renter's insurance carrier for such events and losses; but in any event Renter shall have final responsibility to Owner for all such losses.  This obligation may be limited if Renter purchases optional DW and/or optional SLP.  SEE PARAGRAPHS 16 and 17 FOR MORE INFORMATION ON OPTIONAL DW AND OPTIONAL SLP.

*Id.* ¶ 3.  Mr. Maynard was aware that he could buy insurance coverage on the rental vehicle but declined to purchase the additional insurance offered by Enterprise.  *Id.* ¶ 4.  This additional coverage, referred to as supplemental liability protection insurance coverage, is described in Section 8 and certain other sections of the Rental Agreement.  *Id.*  Mr. Maynard believed his personal insurance would cover the vehicle and that the additional insurance cost too much.  *Id.* ¶ 5.  The cost of supplemental liability protection in 2009 was $12.99 per day.  *Id.*

Mr. Maynard gave the Rental to non-party Scotty Beausejour to use for the rental period.  *Id.* ¶ 6.  Mr. Beausejour fully reimbursed Mr. Maynard for the cost of the rental.  *Id.*  Mr. Maynard did not use the rental vehicle himself during the term of the rental.  *Id.*

On June 7, 2009, Mr. Beausejour was involved in an accident in which he struck Thomas Webster, causing Mr. Webster injury.  *Id.* ¶ 7.  On May 24, 2010, Mr. Webster filed an action in the Maine Superior Court, Cumberland County,

titled <u>Webster v. Beausejour</u>, Docket No. CV-10-267 (Webster Matter), against Mr. Beausejour alleging that Mr. Beausejour's negligent operation caused his injuries (Webster Complaint). *Id.* ¶ 8. On November 13, 2009, April 1, 2010 and May 25, 2010, Mr. Webster made demands for payment to Enterprise. *Id.* ¶ 9. Enterprise assumed Mr. Beausejour's defense on or about June 16, 2010. *Id.* ¶ 10.

On April 30, 2010 and July 16, 2010, Enterprise notified Mr. Maynard of its position that he had an obligation to defend and indemnify Enterprise for any damages relating to Mr. Beausejour's use of the Rental. *Id.* ¶ 11. Mr. Maynard did not initially respond to these demands. *Id.* Enterprise notified Mr. Maynard of scheduled mediation dates and invited Mr. Maynard to participate in the mediation in conformance with Enterprise's position that Mr. Maynard had obligations under the indemnity provisions of the Rental Agreement. *Id.* ¶ 12. In response to Enterprise's demands, counsel for Mr. Maynard contacted counsel for Enterprise to clarify the basis for the demand for defense and indemnity. *Id.* ¶ 13. Despite Mr. Maynard's request through counsel for copies of any insuring or bonding agreements applicable to this matter, Enterprise did not provide those materials to Mr. Maynard or his counsel. *Id.* Enterprise's counsel informed Mr. Maynard's counsel that no separate insurance existed and that Enterprise was defending the Beausejour case pursuant to its obligations under 29-A M.R.S. § 1611. *Id.* ¶ 14. After an exchange of communications between counsel, Mr. Maynard's counsel advised Enterprise's counsel by letter dated November 2, 2010 that Enterprise was acting as a volunteer in agreeing to defend and indemnify Mr. Beausejour based

4

upon his analysis of *Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, 838 A.2d 1157. *Stip.* ¶ 15.  Mr. Maynard's counsel closed by asking that he be "kept advised of the progress of the underlying litigation." *Id.*  No further communication was made by Enterprise to Mr. Maynard or his counsel until counsel was asked to accept service when the Complaint in this matter was filed.  *Id.*

Pursuant to the Superior Court Scheduling Order in the Webster Matter, Enterprise, on behalf of Mr. Beausejour, engaged in mediation with Mr. Webster to attempt to resolve the case.  *Id.* ¶ 16.  As a result of the mediation, on December 16, 2010, Enterprise settled the Webster Matter for a total cash payment of $260,000. *Id.* ¶ 17.  In addition to the cash payment to Mr. Webster, Enterprise expended $17,401.67 in attorney's fees defending the action on behalf of Mr. Beausejour.  *Id.* ¶ 18.

Mr. Maynard has rented cars from Enterprise on six different occasions between June 2007 and June 2009.  *Id.* ¶ 19.  On each occasion, Mr. Maynard declined the additional insurance offered by Enterprise.  *Id.*  Mr. Maynard rented cars with such frequency that he set up a corporate account with some car rental companies to obtain the corporate rate.  *Id.* ¶ 20.  Mr. Maynard estimates that he has rented cars from other car rental agencies over fifty times over the last eight years.  *Id.* ¶ 21.  In each instance, Mr. Maynard declined the collision damage waiver and other insurance.  *Id.*  When Mr. Maynard rented a car from a rental agency, he received a copy of the rental agreement and its terms and conditions.  *Id.*

¶ 22.  Mr. Maynard has rented cars on behalf of Mr. Beausejour on approximately five occasions before the rental of the Dodge Charger.  *Id.* ¶ 23.

Enterprise was not a defendant in the underlying action by which Mr. Webster sought recovery from Mr. Beausejour.  *Id.* ¶ 24.  Enterprise has met the requirements of 29-A M.R.S. § 1611 through self-insurance guaranteed by means of a surety bond.  *Id.* ¶ 25.  The bond provides it with coverage that meets the requirement of the statute.  *Id.*

By agreement, the parties have placed the following documents before the Court: (1) the June 3, 2009 Rental Agreement, (2) five other Rental Agreements between Mr. Maynard and Enterprise between June 2007 and August 2009, and (3) the Enterprise Surety Bond.  *Id.* Ex. A-C.

## II.    THE ENTERPRISE MOTION

### A.    Enterprise's Position

In its motion for summary judgment, Enterprise casts the legal question as a simple one of contract law.  *Pl.'s Mot. for Summ. J.* at 4-5 (Docket # 13) (*Pl.'s Mot.*).  Enterprise relies on the indemnity provision in paragraph eight of the Rental Agreement and says that this provision clearly and unequivocally requires Mr. Maynard to indemnify Enterprise "for all losses, including losses arising from his lending the rental car to Scotty Beausejour."  *Id.* at 5.

Enterprise anticipates Mr. Maynard's defenses and attempts to parry them.  First, it rejects Mr. Maynard's claim that its payment to Mr. Webster was voluntary.  *Id.* at 5-7.  Instead, it contends that Enterprise made the payment in

accordance with its obligation to comply with Maine law, 29-A M.R.S. § 1611. Second, it disputes any argument that the Rental Agreement in this case was unconscionable. *Id.* at 7. It contends that its Rental Agreement was not a contract of adhesion, *id.* at 7-8, and even if a contract of adhesion, Enterprise says that it is still enforceable, *id.* at 8-13. Relying primarily on *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, 995 A.2d 651, Enterprise maintains that the Maine Supreme Judicial Court rejected the view that a contract like the Enterprise Rental Agreement is substantively unconscionable. *Id.* at 13-15.

### B.    Mr. Maynard's Motion

Robert Maynard contends that he has no obligation to pay Enterprise and that he is entitled to summary judgment. *Def.'s Mot. for Summ. J.* at 5-11 (Docket # 15) (*Def.'s Mot.*). Conceding that in the past, Enterprise could have been held vicariously liable for Mr. Beausejour's negligence pursuant to 29-A M.R.S. § 1652, Mr. Maynard says that in 2005, Congress preempted this state statute when it enacted the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU)."[3]  *Id.* at 6.  According to Mr. Maynard, "SAFETEA-LU prohibits statutes—including state laws—that impose vicarious liability on rental car companies." *Id.* Once the state statute is eliminated, Mr. Maynard says that "standard tort rules govern the liability arising out of the accident involving Mr. Beausejour and Mr. Webster" and under *Ashe*, Mr. Maynard maintains Enterprise "is not liable for the torts of vehicle operators who are not employees or agents." *Id.* (quoting *Ashe*, 2003 ME 147, ¶ 8, 838 A.2d at 1159).

---

[3]    Pub. L. No. 109-59, § 10208, 119 Stat. 1144, 1935 (2005) (codified at 49 U.S.C. § 30106).

Mr. Maynard also disputes whether liability may be imposed against Enterprise under 29-A M.R.S. § 1161. *Id.* at 7. He observes that section 1161(5) only imposes liability "for which the owner of a motor vehicle . . . may be liable for by reason of the operation of a motor vehicle . . . subject to this chapter." *Id.* (emphasis omitted). Mr. Maynard argues that this provision does not *create* liability for Enterprise but only sets forth the insurance coverage a company like Enterprise must have to cover any of its own liability that may arise. *Id.*

Turning to Enterprise's contentions, Mr. Maynard argues that this Rental Agreement meets the standards for unconscionability that the Maine Supreme Judicial Court set forth in *Koshy*, contending the "notion that Mr. Maynard must repay Enterprise is shockingly unfair." *Id.* at 12.

## C.    Enterprise's Response to Mr. Maynard's Motion

In response to Mr. Maynard's motion, Enterprise asserts that adoption of his argument "would result in a dramatic judicial amendment to Maine's Financial Responsibility Statute." *Pl.'s Obj. to Def.'s Mot. for Summ. J.* at 1 (Docket # 19) (*Pl.'s Opp'n*). First, Enterprise claims that its payment to Mr. Webster was "not voluntary" because the Financial Responsibility Statute imposes "direct liability on the owner of a rental car should it cho[o]se to self-insure the vehicle." *Id.* at 2. Next, Enterprise rejects Mr. Maynard's SAFETEA-LU argument, contending that the federal statute "did not affect or change the financial responsibility obligations of rental car agencies under Maine law." *Id.* at 3. It quotes 49 U.S.C. § 30106(b) as providing specifically that "[n]othing in this section supersedes the law of any State

8

. . . imposing financial responsibility or insurance standards on the owner of a motor vehicle . . . ."  *Id.*  Enterprise claims that Mr. Maynard "fails to distinguish between the functions of [29-A M.R.S.] sections 1611 and 1652.  Section 1611 is an insuring provision . . . Section 1652 deals with vicarious liability. . . ."  *Id.* at 2-3.  Enterprise deflects Mr. Maynard's citation of *Ashe* as inapposite and relies on *Lo v. Enterprise Rent-A-Car of Boston, LLC*, 721 F. Supp. 2d 56 (D. Me. 2010), and *North East Ins. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me. 1981), to support its position.  *Id.* at 4-6.

Regarding the unconscionability argument, Enterprise cites *Jay Cashman, Inc. v. Portland Pipe Line Corp.*, 559 F. Supp. 2d 85, 109 (D. Me. 2008), for the proposition that neither a general sense of "unfairness" nor a claim he was not properly warned about an economic risk meets the standard for unconscionability.  *Id.* at 7.  Enterprise emphasizes that Mr. Maynard was "a repeat and sophisticated consumer of rental car services who established a business account to obtain lower pricing."  *Id.*  It also stresses his familiarity with the rental car forms and the absence of "hidden terms, surprise or oppression" in the Rental Agreement.  *Id.* at 8.

### D.   Mr. Maynard's Response to Enterprise's Motion

Mr. Maynard disputes Enterprise's claim that it was legally obligated to pay Mr. Webster's underlying claim against Mr. Beausejour.  *Opp'n of Def. to Pl.'s Mot. for Summ. J.* at 4 (Docket # 20) (*Def.'s Opp'n*).  In fact, he says that his counsel placed Enterprise on notice that under *Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, 838 A.2d 1157, Enterprise not only had no legal obligation to pay the Webster claim

9

but that any such payment would be "the act of a volunteer." *Id.*   Mr. Maynard contends that "the Maine Supreme Judicial Court carefully analyzed the scope of § 1611 in *Ashe*," holding only that the rental company bond "appl[ied] when there was 'liability of the insured or the principal to the claimant.'" *Id.* at 5 (quoting *Ashe*, 2003 ME 137, ¶ 12, 838 A.2d at 1161).  He argues that "[n]either § 1161, the Rental Agreement, nor the bond extend coverage to the operator of the rental car." *Id.*  Mr. Maynard distinguishes *Ashe* on the ground that enactment of SAFETEA-LU preempted section 1652 and therefore it no longer applies to claims other than direct liability claims. *Id.* at 6.

Mr. Maynard reiterates his contention that the indemnity clause of the Enterprise rental agreement is unconscionable and unenforceable. *Id.* at 6-8.  He notes that Enterprise's quotations from *Barrett v. McDonald Invs., Inc.*, 2005 ME 43, 870 A.2d 146, are from the concurrence, not the majority opinion.  He objects to Enterprise's effort to characterize this transaction as a commercial one and distinguishes *Jay Cashman* on the ground that it analyzed a commercial transaction. *Id.* at 7.  Finally, he challenges Enterprise to distinguish *Koshy*, which he says involved "the identical indemnity clause." *Id.* at 8.

### E.   Enterprise's Reply

In its reply, Enterprise says that Mr. Maynard's reliance on *Ashe* is misplaced. *Reply in Support of Enterprise's Mot. for Summ. J.* at 2 (Docket # 23) (*Pl.'s Reply*).  It maintains that Mr. Maynard's position "ignores the substantial difference between the legal and factual basis upon which the *Ashe* decision was

rendered" and "also ignores this Court's recent decision in *Lo*." *Id.* Enterprise contends that the pre-emption imposed by SAFETEA-LU "only dealt with the portions of section 1652 which addressed joint and several liability." *Id.* at 3. It concludes that "the provision which prohibits a passenger from making a claim against the rental car owner is still valid and the holding of *Ashe* remains undisturbed." *Id.* Enterprise further argues that section 1652 is "not the only basis for liability" and that "[s]ection 1611 sets forth a separate insuring obligation for which Enterprise is directly liable as a self insured." *Id.* Enterprise contends that *Lo* supports this position.

Turning to unconscionability, Enterprise points out that because Mr. Maynard has raised unconscionability as an affirmative defense, he has the burden to establish that the indemnity clause is unconscionable. *Id.* at 4. Enterprise distinguishes *Koshy* by contending that here, "the record here is replete with the facts necessary to grant Enterprise's Motion." *Id.* at 5.

### F.   Mr. Maynard's Reply

First, Mr. Maynard sees an inconsistency in Enterprise's arguments in this case and its arguments in similar cases before this Court. *Reply Mem. of Def. in Support of Def.'s Mot. for Summ. J.* at 2 (Docket # 22). Further, it dismisses Enterprise's reliance on *Lo*, saying that "the court did not hold in *Lo* that Enterprise *was* liable as an insurer; rather, the court held that even *if* Enterprise was liable on these grounds, that liability would be indistinguishable from liability based upon joint and several responsibility, such that a payment to discharge Enterprise's joint

and several liability would 'count against' the limit of coverage set forth in 29-A
M.R.S.A. § 1611." *Id.* (emphasis in original). Mr. Maynard asserts that "Enterprise
specifically excluded from its argument in *Lo* the scope of application of the statute
at issue in this case, Section 1611." *Id.* at 2-3 (quoting *Def.'s Mot. for Summ. J.* at 6
n.3, *Lo v. Enterprise Rent-A-Car of Boston, LLC*, No. 2:10-cv-73-DBH (D. Me. Mar.
25, 2010)). Mr. Maynard maintains that Enterprise has argued "dramatically
opposed positions." *Id.* at 4. He says that Enterprise ought to be held to its prior
position and, as such, be held to have made its payment voluntarily in this case. *Id.*
at 6-7. Finally, Mr. Maynard revisits his unconscionability argument. *Id.* at 7.

## III.   DISCUSSION

### A.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "has the potential to
change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain
Underwriters at Lloyd's of London.*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting
*McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). An issue is
genuine if "a reasonable jury could resolve the point in favor of the nonmoving
party." *Tropigas*, 637 F.3d at 56 (quoting *McCarthy*, 56 F.3d at 315).

Once this evidence is supplied by the moving party, the nonmovant must
"produce specific facts, in suitable evidentiary form, to establish the presence of a
trialworthy issue." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2

(1st Cir. 1999) (internal citation and punctuation omitted).  In other words, the non-moving party must "present 'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims."  *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).   The Court then "views the facts and draws all reasonable inferences in favor of the nonmoving party."  *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011).  However, the Court "afford[s] no evidentiary weight to 'conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.'"  *Tropigas*, 637 F.3d at 56 (quoting *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001)); *accord Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 325 (1st Cir. 2009); *Carroll*, 294 F.3d at 236-37.   Here, the parties submitted a Stipulation of Material Facts; nevertheless, the Court is still obligated to view even stipulated facts in a manner most congenial to the nonmovant.

### B.     By Its Terms, The Rental Agreement Requires Reimbursement

If the Rental Agreement between Mr. Maynard and Enterprise is enforceable, the terms of the Agreement plainly require Mr. Maynard to reimburse Enterprise for the losses Enterprise incurred from the damages Mr. Beausejour caused to Mr. Webster while operating the rental car.   Paragraph eight of the rental contract reads, in part:

> 8.  <u>Indemnification by Renter</u>.  *Renter shall* defend, *indemnify* and hold *Owner* harmless *from all losses, liabilities, damages, injuries*, claims, demands, costs, attorney fees, and other expenses *incurred by Owner*

> in any manner from this rental transaction, or *from the use of Vehicle by any person, including claims of, or liabilities to, third parties.*

*Stip.* ¶ 3 (emphasis supplied). Mr. Maynard was the "renter" and is obligated under this clause to "indemnify" the "owner," Enterprise, from "all losses, liabilities, damages, [and] injuries" incurred by Enterprise from "the use of the vehicle by any person," including Mr. Beausejour, "including claims of, or liabilities to, third parties," namely Mr. Webster. *Stip.* ¶ 3; *see also Fed. Ins. Co. v. Commerce Ins. Co.*, 597 F.3d 68, 70 (1st Cir. 2010) ("[i]f the terms of a contract are unambiguous, then it must be enforced according to those terms in accordance with their ordinary and usual sense"); *Koshy*, 2010 ME 44, ¶ 51, 995 A.2d 651, 667 ("[a] contract is given its plain meaning if the terms are clear").

### C. Enterprise Is Not Entitled to Reimbursement from Mr. Maynard

Even though the rental agreement required Mr. Maynard to indemnify Enterprise, the contract requires that for the loss to be reimbursable, Enterprise must have "incurred" it.[4] *Stip.* ¶ 3 ("incurred by Owner").

### 1. Liability Under Common Law

"The general rule in Maine and elsewhere is that an owner of a vehicle is not liable for the torts of vehicle operators who are not employees or agents." *Ashe*, 2003 ME 17, ¶ 8, 838 A.2d at 1159); *see also Koshy*, 2010 ME 44, ¶ 26, 995 A.2d at 661 ("Ordinarily, a person who is in control of a vehicle and allows another

---

[4]     "Incur" is defined as "to meet or fall in with (as an inconvenience) : become liable or subject to : bring down upon oneself <*incurred* large debts to educate his children> <fully deserving the penalty he *incurred*>." *Webster's Third New Int'l Dictionary* at 1146 (2002 ed.). Interpreting this language against the drafter, the Court reads the contractual term "incurred" to refer to obligations that Enterprise became liable for or subject to as a consequence of its rental of the motor vehicle and not to include voluntary payments.

individual to drive it is not liable in tort for the driver's negligence").  As there is no suggestion that Enterprise itself was negligent in causing Mr. Webster's injuries, Mr. Maynard claims and Enterprise does not dispute that there is no basis under common law that Enterprise would be held legally liable for Mr. Webster's damages. Thus, to hold Enterprise legally responsible, there must be a statutory basis for its liability.[5]

### 2.   Statutory Bases for Liability

#### a.  Liability Under 29-A M.R.S. § 1652

There is a provision of Maine statutory law that appears to make Enterprise liable for the damages caused by the permitted operator of its vehicle: 29-A M.R.S. § 1652, which reads, in part:

> 1.  LIABILITY.  An owner engaged in the business of renting motor vehicles, with or without drivers, who rents a vehicle to another for use on a public way, is jointly and severally liable with the renter for damage caused by the negligence of the renter in operating the vehicle and for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter.

29-A M.R.S. § 1652.  Here, Enterprise is an "owner engaged in the business of renting motor vehicles" and it rented "a vehicle to another," namely Mr. Maynard, "for use on a public way."  Accordingly, it is "jointly and severally liable with the renter . . . for any damages caused by the negligence of a person operating the vehicle by or with the permission of the renter."  *Id.*  In this case, as Mr. Maynard gave Mr. Beausejour permission to operate the Enterprise rental car, the provision

---

[5]      Enterprise could have contractually agreed to pay damages to third parties injured by the negligence of permissive operators of its rental vehicles.  But, not surprisingly, Enterprise does not claim that it drafted its rental contract in this way.

on its face applies and imposes liability on Enterprise as the vehicle owner. *Koshy*, 2010 ME 44, ¶ 39, 995 A.2d at 664 ("we construe section 1652 to create joint and several liability between the rental vehicle's owner and . . . a person authorized by the renter to operate the vehicle who does so negligently").

Mr. Maynard concedes that section 1652 would, on its own, impose liability on Enterprise. *Def.'s Mot.* at 6 ("[i]n the past, Enterprise could have been held vicariously liable for Mr. Beausejour's negligence pursuant to 29-A M.R.S.A. § 1652"). However, Mr. Maynard maintains that Congress preempted section 1652 when it enacted SAFETEA-LU.

### b. SAFETEA-LU Preempts 29-A M.R.S. § 1652

On August 10, 2005, Congress enacted SAFETEA-LU, often referred to as the Graves Amendment, which provides, in part:

> An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable under the law of any State . . . by reason of being the owner of the vehicle . . . for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if –
>
> > (1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and
> >
> > (2) there is no negligence or criminal wrongdoing on the part of the owner . . . .

49 U.S.C. § 30106(a). This federal statute clearly preempts 29-A M.R.S. § 1652.

Enterprise concedes that § 1652 is preempted but disagrees that § 1611 is similarly preempted. It asserts that in its savings clause, SAFETEA-LU expressly

provided that it did not supersede state law, *Pl.'s Reply* at 3, and for support, it cites § 30106(b), which reads:

> (b) Financial responsibility laws.—Nothing in this section supersedes the law of any State or political subdivision thereof --
>
> > (1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle . . . .

49 U.S.C. § 30106(b)(1).  Emphasizing the text "[n]othing in this section supersedes the law of any State," Enterprise views SAFETEA-LU's savings clause as exempting section 1611.

The Court agrees with Enterprise that the SAFETEA-LU did not preempt 29-A M.R.S. § 1611, but the Court disagrees with Enterprise that it makes a difference here.  To place this question in context, as Professor Susan Lorde Martin explained, Congress enacted the so-called Graves Amendment to SAFETEA-LU after intense lobbying by car dealer groups, which wanted to "eliminate vicarious liability." Susan Lorde Martin, *Commerce Clause Jurisprudence and the Graves Amendment: Implications for the Vicarious Liability of Car Leasing Companies*, 18 U. FLA. J.L. & PUB. POL'Y 153, 154 (Aug. 2007).  She wrote that, although the car lobbyists were not successful in the New York Legislature repealing an analogous state law, "they were successful in Congress."  *Id.*  She describes the SAFETEA-LU as prohibiting "any state from holding those in the business of renting or leasing cars liable for injuries caused by those cars, absent any negligence on their part."  *Id.*

Courts have uniformly concluded that SAFETEA-LU preempts state law.  *See Green v. Toyota Motor CreditCorp*, 605 F. Supp. 2d 430, 434 (E.D.N.Y. 2009) ("[t]he

Graves Amendment clearly intended to preempt such a policy as a matter of federal law and bar recovery against car rental and leasing companies based on vicarious liability"); *Flagler v. Budget Rent a Car Sys.*, 538 F. Supp. 2d 557, 558 (E.D.N.Y. 2008) ("[t]here is no question but that the Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease vehicles"); *Rein v. Cab East LLC*, No. 08 Civ. 2899 (PAC), 2009 U.S. Dist. LEXIS 52617, at *7 (S.D.N.Y. Jun. 22, 2009) ("[t]he Graves Amendment expressly preempts the vicarious liability provisions of [state law] for claims commenced after August 10, 2005, as numerous courts have held"); *Pacho v. Enterprise Rent-A-Car Co.*, 572 F. Supp. 2d 341, 350 (S.D.N.Y. 2008) ("this amendment had the effect of preempting any state law that imposed vicarious liability to the owner or lessor of a vehicle without regard to fault"); *Kersey v. Hirano*, No. WDQ-08-1041, 2009 U.S. Dist. LEXIS 60489, at *10-11 (D. Md. Jul. 15, 2009) (dismissing claim against rental company based on unavailability of vicarious liability in light of the Graves Amendment); *Carton v. GMAC*, 639 F. Supp. 2d 982, 990 (N.D. Iowa 2009); *Rodriguez v. Testa*, 296 Conn. 1, 4-5, 993 A.2d 955, 958 (2010); *Martin v. Crook*, No. 9-491/08-1711, 2009 Iowa App. LEXIS 784, at *29 (Iowa Ct. App. Aug. 6, 2009). Indeed, although dictum, the Maine Law Court has noted, citing 49 U.S.C. § 30106(a):

> The effect of this statute [29-A M.R.S. § 1652] has apparently been preempted by recent federal legislation . . . .

*Koshy*, 2010 ME 44, ¶ 19 n.6, 995 A.2d at 659-60 n.6.

Why would Congress expressly preempt state laws that imposed joint and several liability on car rental companies in one part of SAFETEA-LU only to allow continued joint and several liability in the guise of state financial responsibility statutes in another?  The answer is that Congress did not.  The Eleventh Circuit addressed a similar argument and simply demolished it:

> If we construe the Graves Amendment's savings clause as appellants wish, it would render the preemption clause a nullity.  Every vicarious liability suit would be rescued because it could result in a judgment in favor of an accident victim, even though the judgment is premised on the very vicarious liability the Amendment seeks to eliminate.  The exception would swallow the rule.

*Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1248 (11th Cir. 2008). Instead, the Eleventh Circuit concluded that the savings clause in § 30106(b)(1) is a financial responsibility provision, not a liability provision.  *Id.* at 1249.  Other courts have reached the same conclusion.  *See, e.g., Rodriguez*, 296 Conn. at 14, 993 A.2d at 963 ("we likewise conclude that the savings clause preserves those state statutes that impose liability on a lessor for failure to satisfy such [financial responsibility] requirements"); *Meyer v. Nwokedi*, 777 N.W.2d 218, 223-24 (Minn. 2010) ("[w]e agree with *Garcia* and conclude that 'financial responsibility' refers to insurance-like requirements under state law"); *Martin*, 2009 Iowa App. LEXIS 784, at *30-31.

The Court concludes that 49 U.S.C. § 30106(a) preempts 29-A M.R.S. § 1652 and that the savings clause in § 30106(b)(1) does not re-impose the joint and several liability prohibited in § 30196(a).

### c.  Liability under 29-A M.R.S. § 1611

Even if SAFETEA-LU preempts section 1652, Enterprise says that it was still obligated to pay Mr. Webster under a different, non-preempted provision of Maine law. It maintains that 29-A M.R.S. § 1611 makes it legally responsible for Mr. Webster's damages; this provision reads, in part:

> **1. Insurance, bond or self-insurance required.** The Secretary of State may not register any motor vehicle for rent, lease, hire or livery and a person may not operate or cause to be operated on any public way in the State such a motor vehicle until the owner or owners of that vehicle procure insurance or a bond covering the operation of that vehicle by:
>
> . . .
>
> > B. Presenting a good and sufficient indemnity bond, approved by the Secretary of State, bonding the applicant in an amount the Secretary of State prescribes and having as surety 2 responsible individuals or a surety company authorized to transact business in this State;
>
> . . .
>
> **5. Coverage of insurance or bond.** The required insurance policy or bond must adequately provide liability insurance for the collection of damages for which the owner of a motor vehicle or vehicles may be liable by reason of the operation of a motor vehicle or vehicles subject to this chapter.

29-A M.R.S. § 1611(1), (5). Having secured the necessary bond, Enterprise maintains that the statutory language in subsection (1), "covering the operation of that vehicle," and in subsection (5), "collection of damages for which the owner . . . may be liable by reason of the operation of a motor vehicle," mandate that it cover the losses to Mr. Webster. *Pl.'s Mot.* at 6.

Mr. Maynard emphatically rejects Enterprise's reading of section 1611. He disputes the notion that this section creates liability on Enterprise; instead, he

maintains that it "only spells out the insurance coverage that Enterprise and other rental car companies are required to obtain to cover their own liability." *Def.'s Mot.* at 7. In other words, he says that section 1611 does not create liability; it only mandates that a rental car company assure the state of Maine—by purchasing insurance or by filing a bond—that it has the wherewithal to pay claims for which it is liable.

Again, the Court concludes that Mr. Maynard is correct. Like 49 U.S.C. § 30106(a), the Court views section 1611 as a financial responsibility—not a liability—provision. Even though section 1611 contains language referring to operation of a motor vehicle, the overriding intent of section 1611 is to assure "collection of damages," not to create a separate basis for imposing liability for those damages. This conclusion is consistent with the Maine Law Court's refusal in *Ashe* to conclude that section 2708-A (section 1611's predecessor) provided an independent basis for establishing rental company liability for passengers in contravention to 29 M.R.S. § 1862 (section 1652(3)'s predecessor). *See Ashe*, 2003 ME 147, ¶ 12, 838 A.2d at 1161 ("[s]ection 2708-A requires owners of rental vehicles to maintain liability protection only for claims for which liability could arise under the law"). Furthermore, in contrast with section 1652, which is found in the "Vicarious Liability" subchapter, section 1611 is found in the "General Financial Responsibility" subchapter. *Compare* 29-A M.R.S. § 1652 *with* 29-A M.R.S. § 1611.

Enterprise urges the view that the decision of the United States District Court in *Lo* supports its argument that section 1611 imposes an independent basis

for liability. *Pl.'s Opp'n* at 4-5. But to the extent the *Lo* Court addressed section 1611, it was to note that, by its plain language, section 1611 is a "provision for collection of damages" that ensures that any vehicle has a minimum "amount of coverage." 721 F. Supp. 2d at 58. The fact that the District Court concluded that section 1611 covered damages based on joint and several principles only reflects its understanding of the breadth of the "provision for collection of damages," not a determination that the section independently created liability. *Id.*

### 3.      Liability under the Equitable Subrogation Doctrine

Once the Court concludes—as it has—that Enterprise was not required to pay Mr. Webster under either Maine statute or common law, the last question is whether the doctrine of equitable subrogation nevertheless requires Mr. Maynard to pay Enterprise for its payment to Mr. Webster on behalf of Mr. Beausejour.

If one "pays a debt that in equity and good conscience should have been paid by another," he may "succeed[] to the rights of the payee against the other." *North East Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me. 1981). The doctrine of equitable subrogation "is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." *Nappi v. Nappi Distribs.*, 1997 ME 54, ¶ 8, 691 A.2d 1198, 1999 (internal citation omitted). But, as the *Nappi* Court explained, equitable subrogation "should not . . . encourage a person to intrude upon the affairs of another." 1997 ME 54, ¶ 8, 691 A.2d at 2000 (quoting *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 318 A.2d 659, 661 (Vt. 1974)).

Under the traditional doctrine, however, an exception applies where the payment is made by a "volunteer." *Id.* To act voluntarily under *North East* is to act "voluntarily or officiously" to satisfy "another's obligation, under no legal or moral obligation to do so or with no interest of his own to protect." *Id.* In other words, "[o]ne who pays the debt of another under a mistaken belief that he had an obligation to pay or interest to protect is not a volunteer and may be subrogated to the rights of the payee." *Id.*

In its motion, Enterprise argued that its payment was not voluntary because it was made pursuant to 29-A M.R.S. § 1611. Because the Court has concluded that it was not obligated to make the payment under 29-A M.R.S. § 1611, this argument fails at its premise. However, Enterprise also asserted that its payment was not voluntary under *North East*'s definition of "volunteer;" specifically, Enterprise argues that its payment "is not and could not be voluntary" because it made the payment to Mr. Webster under the mistaken belief that it was obligated to do.[6] *Pl.'s Opp'n* at 6.

Even assuming that Enterprise's payment could be considered involuntary and therefore avoid that exception to the doctrine, the doctrine of equitable subrogation still does not fit the facts in this case so as to allow Enterprise to collect from Mr. Maynard the value of its payment to Mr. Webster.

---

[6] At oral argument, Enterprise clarified that it was not contending it was entitled to collect against Mr. Maynard under the equitable subrogation doctrine. Rather, its emphasis in its objection was solely that it was not, as Mr. Maynard had claimed, a "volunteer" in making its payment in this case. *See Pl.'s Opp'n* at 6 ("[n]or does Maynard's cited case law support his position that Enterprise is a volunteer"). Instead, it maintained that its payment on behalf of Mr. Beausejour was not voluntary within the meaning of volunteer in the equitable subrogation context.

The debt Enterprise paid was not Mr. Maynard's debt to Mr. Webster; it was Mr. Beausejour's debt to Mr. Webster. If applicable, equitable subrogation would subrogate Enterprise to any "rights of its payee," Mr. Beausejour, to collect money from Mr. Maynard. But there is no reason to conclude on this record that Mr. Beausejour has any rights against Mr. Maynard. Mr. Maynard only allowed Mr. Beausejour the use of the Enterprise vehicle and Enterprise made no contention that Mr. Beausejour has the right to proceed against Mr. Maynard for the damage Mr. Beausejour negligently caused Mr. Webster. In other words, Enterprise cannot expect to claim equitable subrogation against Mr. Maynard for assuming the debt of Mr. Beausejour.

In this sense, Enterprise's payment to Mr. Webster was not a payment to someone else on behalf of Mr. Maynard; it was a payment for itself on the erroneous assumption that it could collect in its own name against Mr. Maynard. This is not a matter of "compel[ling] the ultimate discharge of an obligation by him who in good conscience ought to pay it," *Nappi*, 1997 ME 54, ¶ 8, 691 A.2d 1198, 1999, and the doctrine does not apply.

### D.   Unconscionability

Having concluded that Enterprise is not entitled to claim reimbursement from Mr. Maynard, the Court does not reach the next question as to whether, if Enterprise were so entitled, its Rental Agreement with Mr. Maynard would be unenforceable due to unconscionability.

**IV.    CONCLUSION**

The Court GRANTS Robert Maynard's Motion for Summary Judgment (Docket # 15) and DENIES Enterprise Rent-A-Car Company of Boston, LLC's Motion for Summary Judgment (Docket # 13).  The Court ORDERS that Judgment shall issue in favor of Robert Maynard and against Enterprise Rent-A-Car Company of Boston, LLC.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 14th day of May, 2012